1

2

3                                                              O

4

5

6

7

8                   UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   FRANCIS GUEVARA,              ) Case No. CV 14-08120 DDP (MANx)
                                   )
12             Plaintiff,          ) **ORDER DENYING COUNTY DEFENDANT'S**
                                   ) **MOTION TO DISMISS**
13        v.                       )
                                   ) [Dkt. No. 24]
14   COUNTY OF LOS ANGELES,        )
     ELIZABETH GROVER, TONY-PAYAM  )
15   KADE, CITY OF LOS ANGELES,    )
     IVAN McMILLAN, IGNACIO        )
16   ARGUELLES,                    )
                                   )
17             Defendants.         )
     _____ )

18

19        Presently before the Court is Defendant County of Los Angeles'

20   Motion to Dismiss as to Plaintiff's Fourth Cause of Action, based

21   on a "*Monell*" theory of liability.  (Dkt. No. 24.)  Having heard

22   oral arguments and considered the parties' submissions, the Court

23   adopts the following order denying the motion.

24   **I.   BACKGROUND**

25        On October 22, 2012, two LAPD police officers investigated

26   allegations of child abuse.  (First Amended Complaint ("FAC"), ¶

27   31.)  The allegations involved one of Plaintiff's two daughters.

28   (Id.)  She had disclosed to a school official that her father's

1  friend had "inappropriately touched her."  (<u>Id.</u>)  After

2  interviewing the child at her school, the officers decided to take

3  the child and her sister to the police station.  (<u>Id.</u> at ¶¶ 32-35.)

4  Plaintiff was out of town at the time.  (<u>Id.</u> at ¶ 30.)

5      After interviews with the children's grandmother, the girls,

6  Plaintiff, and the suspect, case workers for the County decided to

7  take the children into protective custody.  (<u>Id.</u> at ¶ 50.)  They

8  were held by the County for three days, until a juvenile court

9  released them back into Plaintiff's custody.  (<u>Id.</u> at ¶ 55.)

10     Plaintiff filed a Complaint (and later the FAC) alleging civil

11 rights violations under 42 U.S.C. § 1983, including a *Monell* claim[1]

12 of liability on the part of the County for a policy or practice of

13 removing children from their family homes without exigent

14 circumstances.  The County moves to dismiss the *Monell* claim –

15 Plaintiff's Fourth Cause of Action – for failure to state a claim.

16 **II.   LEGAL STANDARD**

17     In order to survive a motion to dismiss for failure to state a

18 claim, a complaint need only include "a short and plain statement

19 of the claim showing that the pleader is entitled to relief."  <u>Bell</u>

20 <u>Atl. Corp. v. Twombly</u>, 550 U.S. 544, 55 (2007) (quoting Conley v.

21 Gibson, 355 U.S. 41, 47 (1957)).  A complaint must include

22 "sufficient factual matter, accepted as true, to state a claim to

23 relief that is plausible on its face."  <u>Ashcroft v. Iqbal</u>, 556 U.S.

24 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570).  When

25 considering a Rule 12(b)(6) motion, a court must "accept as true

26 all allegations of material fact and must construe those facts in

27 _____

28     [1]See <u>Monell v. New York City Dep't of Social Servs.</u>, 436 U.S. 658 (1978).

2

1  the light most favorable to the plaintiff."  <u>Resnick v. Hayes</u>, 213

2  F.3d 443, 447 (9th Cir. 2000).

3  **III. DISCUSSION**

4       A plaintiff alleging civil rights violations under 42 U.S.C. §

5  1983 may not state a claim against a government entity for the

6  actions of the entity's employees; only the actions of the entity

7  itself give rise to liability.  <u>Monell v. Dep't of Soc. Servs. of</u>

8  <u>City of New York</u>, 436 U.S. 658, 691 (1978) ("[W]e conclude that a

9  municipality cannot be held liable *solely* because it employs a

10 tortfeasor—or, in other words, a municipality cannot be held liable

11 under § 1983 on a *respondeat superior* theory.").  However, a

12 government entity *can* be held liable for "constitutional

13 deprivations visited pursuant to governmental 'custom' even though

14 such a custom has not received formal approval through the body's

15 official decisionmaking channels."  <u>Id.</u> at 690-91.

16      Plaintiff alleges just such an informal government custom in

17 its Fourth Cause of Action, captioned "*Monell* Liability – Removal

18 [Plaintiff v. County]."  (FAC at 27.)  The cause of action stated

19 is that "Defendant COUNTY . . . established and/or followed

20 policies, procedures, customs, and/or practices . . . which

21 policies were the cause of violation of Plaintiff's constitutional

22 rights."  (<u>Id.</u> at ¶ 75.)  More specifically, the FAC alleges that

23 the County has a policy of "detaining and/or removing children from

24 their parents without exigent circumstances (imminent danger of

25 serious bodily injury), warrant, court order and/or consent of

26 their parents."  (<u>Id.</u>)  It further alleges that "COUNTY has

27 developed a long standing practice of removing children without a

28 warrant . . . when the risk of harm to a child is not so imminent

1  as to have insufficient time within which to obtain a warrant."

2  (Id. at ¶ 12.)  It further alleges that the County did not provide

3  adequate training for its employees in parents' constitutional

4  rights, the use of protective custody warrants, or federal case law

5  regarding "warrantless removals, exigency, least intrusive means,

6  and . . . proper investigation."  (Id. at ¶ 78.)

7      These allegations are enough to state a claim.  They are not

8  merely "a formulaic recitation of a cause of action's elements."

9  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007).  They allege

10  specific policies on the part of the County.  It may be that there

11  is no proof of the existence of such policies, but that is a

12  question for the merits phase of the litigation; as allegations,

13  they do state a claim for relief.

14      Defendants would like the Court to follow the example of

15  another recent Central District decision in Alberici v. Cnty. of

16  Los Angeles, No. CV12-10511-JFW-VBK (April 15, 2013) (order

17  granting in part defendant's motion to dismiss).  There the court

18  dismissed a Monell claim against the County because:

19      [A]fter numerous amendments to their Complaint, Plaintiffs

20      have still failed to identify any specific, formal policy,

21      practice, or custom of either the County of Orange or the

22      County of Los Angeles that may have resulted in a violation of

23      Plaintiffs' civil rights . . . .  Instead, Plaintiffs simply

24      list various, non-specific, generic, and conclusory "policies"

25      purportedly followed by the County of Orange and the County of

26      Los Angeles, such as "the policy of detaining and/or removing

27      children from their family and homes without exigent

28      circumstances" . . . that allegedly led to the violation of

4

1         Plaintiffs' civil rights . . . .   Plaintiffs . . . fail to

2         include any names of or policy numbers for these alleged

3         policies . . . .

4    <u>Id.</u> at 5.

5         The Court respectfully disagrees with the rationale applied in

6    <u>Alberici</u>.  It is not necessary, at the pleadings stage, to be able

7    to identify with particularity the "who, what, where, when, and

8    how" of a claim.   <u>Twombly</u>, 550 U.S. at 569 & n.14 (pleading with

9    heightened particularity not required by Rule 8).   What is

10   necessary is simply enough to put the defendant on notice as to the

11   theory of liability and to state a plausible claim for relief.

12   <u>Starr v. Baca</u>, 652 F.3d 1202, 1216 (9th Cir. 2011).   Here, the

13   County is on notice as to plaintiff's theory: that the County has

14   "established" a policy, custom, or practice of removing children

15   from homes without a warrant even when the circumstances would

16   allow officials to obtain a warrant.   That is either true or it is

17   not.   If it is true, it would plausibly give rise to a

18   constitutional violation.

19        Moreover, the practice need not have an official name, number,

20   or designation.   As the <u>Monell</u> Court explained, the very language

21   of § 1983 allows for a claim based on practices that are not

22   explicitly adopted or named:

23        [A]lthough the touchstone of the § 1983 action against a

24        government body is an allegation that official policy is

25        responsible for a deprivation of rights protected by the

26        Constitution, local governments, like every other § 1983

27        "person," by the very terms of the statute, may be sued for

28        constitutional deprivations visited pursuant to governmental

1       "custom" even though such a custom has not received formal

2       approval through the body's official decisionmaking channels.

3       As Mr. Justice Harlan, writing for the Court, said in <u>Adickes</u>

4       <u>v. S. H. Kress & Co.</u>: "Congress included customs and usages

5       [in § 1983] because of the persistent and widespread

6       discriminatory practices of state officials . . . . Although

7       not authorized by written law, such practices of state

8       officials could well be so permanent and well settled as to

9       constitute a 'custom or usage' with the force of law."

10 <u>Monell</u>, 436 U.S. at 690-91 (citation omitted).  Indeed, it would

11 eviscerate § 1983 protections as against local governments if

12 liability could be avoided by not giving a policy an official name

13 or number.

14       The order in <u>Alberici</u> also cites to <u>City of Oklahoma City v.</u>

15 <u>Tuttle</u> for the proposition that an allegation of a "nebulous

16 'policy' of 'inadequate training' on the part of the municipal

17 corporation" cannot support a *Monell* claim.  471 U.S. 808, 823

18 (1985).  The Court finds the citation inapposite.  In <u>Tuttle</u>, the

19 question was actually whether the trial court could issue *jury*

20 *instructions* that allowed the jury to *infer* inadequate training

21 from a single officer's behavior.  <u>Id.</u>  Thus, it tells us little

22 about pleading standards.[2]

23       A better analysis of the pleading standard for municipal

24 policies and customs is provided by the court in <u>Thomas v. City of</u>

25 <u>Galveston, Texas</u>, 800 F. Supp. 2d 826 (S.D. Tex. 2011).  The <u>Thomas</u>

26 _____

27     [2]<u>Tuttle</u> was, in any event, a plurality opinion that was
drastically limited by another decision a year later.  <u>See</u> <u>Collins</u>

28 <u>v. City of San Diego</u>, 841 F.2d 337, 341 (9th Cir. 1988) (noting the
Supreme Court's change in direction).

1 court noted that district courts had split on the level of

2 specificity required in *Monell* claim pleading after <u>Twombly</u> and

3 <u>Iqbal</u>.   <u>Id.</u> at 841-42.   However, the court identified a reasonable

4 approach to *Monell* pleading that took account of both <u>Twombly/Iqbal</u>

5 and the evidentiary disadvantage plaintiffs usually find themselves

6 at:

7     <u>Iqbal</u> instructed that "[d]etermining whether a complaint

8     states a plausible claim for relief" is "a context-specific

9     task that requires the reviewing court to draw on its judicial

10    experience and common sense."   In the context of municipal

11    liability, as opposed to individual officer liability, it is

12    exceedingly rare that a plaintiff will have access to (or

13    personal knowledge of) specific details regarding the

14    existence or absence of internal policies or training

15    procedures prior to discovery.   Accordingly, only minimal

16    factual allegations should be required at the motion to

17    dismiss stage. Moreover, those allegations need not

18    specifically state what the policy is, as the plaintiff will

19    generally not have access to it, but may be more general . . .

20    .

21    Allegations that provide [adequate] notice could include, but

22    are not limited to, *past incidents of misconduct to others*,

23    multiple harms that occurred to the plaintiff himself,

24    misconduct that occurred in the open, the involvement of

25    multiple officials in the misconduct, or *the specific topic of*

26    *the challenged policy or training inadequacy*.   Those types of

27    details . . . help to satisfy the requirement of providing not

28

1      only fair notice of the nature of the claim, but also grounds

2        on which the claim rests.

3   Id. at 842-44 (internal quotation marks omitted) (citations

4   omitted) (emphases added).

5        In this case, Plaintiff has alleged facts in at least two

6   categories identified by the Thomas court.  First, he has alleged

7   inadequate training, not just generally, but as to specific topics

8   – in this case, the Fourth and Fourteenth Amendment rights of

9   parents, the use of protective custody warrants, and federal case

10  law regarding "warrantless removals, exigency, least intrusive

11  means, and . . . proper investigation."  (FAC at ¶ 78.)  An

12  allegation of inadequate training as to *specific topics* is enough

13  to state a claim.  Compare Zamudio v. Cnty. of Los Angeles, No. CV

14  13-895 ABC (PJWx), 2013 WL 3119178, at *3 (C.D. Cal. May 16, 2013)

15  (holding pleading inadequate because "the Court is left in the dark

16  as to whom Plaintiff alleges was inadequately trained and as to

17  what training she believes they should have received"), with Miller

18  v. City of Plymouth, No. 2:09-CV-205 JVB, 2010 WL 1474205, at *6

19  (N.D. Ind. Apr. 9, 2010) (holding pleading adequate where plaintiff

20  alleged "failure to train [police officers] regarding a proper

21  search of a vehicle").

22       Second, the Thomas court suggested, Plaintiff's allegation of

23  a policy, custom, or practice may be bolstered by allegations of

24  past incidents of similar "misconduct to others."  Thomas, 800

25  F.Supp.2d at 843.  This accords with the Ninth Circuit's repeated

26  holding that "a custom or practice can be inferred from widespread

27  practices or evidence of repeated constitutional violations for

28  which the errant municipal officers were not discharged or

1    reprimanded."  Hunter v. Cnty. of Sacramento, 652 F.3d 1225, 1233

2    (9th Cir. 2011).  Defendants argue that "other cases are irrelevant

3    as to whether a *Monell* violation has occurred in this case."

4    (Reply at 2.)  The Court disagrees.  As another judge in this

5    district has stated with regard to a similar motion to dismiss,

6         Plaintiffs have, by virtue of identifying the cases cited in

7         paragraph 65, made an allegation . . . that those cases

8         support the conclusion that the County has a policy, practice,

9         or custom of removing children from their parents without a

10        warrant or other judicial authorization.  This is a factual,

11        non-conclusory allegation . . . .

12   Edwards v. Cnty. of Los Angeles, No. CV 14-01705 GW (MANx), slip

13   op. at 3 (Nov. 13, 2014) (order granting in part and denying in

14   part motion to dismiss); see also id. at n.3 (suggesting that

15   Plaintiff's collection of cases was on a spectrum of acceptable

16   means of alleging practice or custom, along with academic studies

17   and newspaper reports).  Similarly, the Court here finds that

18   Plaintiff's reference to other cases is in the nature of an

19   allegation that those cases show a policy, custom, or practice of

20   removing children from the home without warrants or exigent

21   circumstances, and that allegation, coupled with reasonably

22   specific language in the general allegations, is enough to state a

23   claim.

24        Defendants' final argument is that Plaintiff's *Monell* claim is

25   just a *respondeat superior* claim dressed up, because "no facts are

26   pled supporting [a claim that] the County has a 'policy' or

27   'practice' of unlawful warrantless removals."  (Mot. Dismiss at

28   10.)  For all the reasons stated above, the Court disagrees.

1  Plaintiff has made sufficient allegations that the County has such

2  a policy.

3  **IV.   CONCLUSION**

4       The Motion to Dismiss is hereby DENIED.

5  IT IS SO ORDERED.

6

7

8  Dated: January 15, 2015

   DEAN D.  PREGERSON
9                                          United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10